UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
STEPHANIE MAZZEI,

                               Plaintiff,                               **REPORT AND**
                                                                              **RECOMMENDATION**
           -against-
                                                                              10-CV-2233 (ENV) (JMA)
THE ABBOTT LABORATORIES & CO., et al.,

                               Defendants.
-------------------------------------------------------------------X
DOROTHEA WOODS-GASTON,

                               Plaintiff,

           -against-                                                10-CV-1011 (ENV) (JMA)

THE ABBOTT LABORATORIES & CO., et al.,

                               Defendants.
-------------------------------------------------------------------X

A P P E A R A N C E S:

Sybil Shainwald
Law Offices of Sybil Shainwald
200 West 57th Street
Suite 402
New York, NY 10019
      *Attorney for Plaintiffs*

Samuel J. Abate, Jr.
Adam B. Michaels
Pepper Hamilton LLP
620 Eighth Avenue
37th Floor
New York, NY 10018-1405
      *Attorneys for Defendant Eli Lilly and Company*

**AZRACK**, **United States Magistrate Judge:**

        In 2010, Stephanie Mazzei and Dorothea Woods-Gaston (collectively, "plaintiffs") filed suit against the drug companies Abbott Laboratories; Carnrick Laboratories, Inc.; Dart

Industries, Inc.; E.R. Squibb & Sons, L.L.C.; Eli Lilly and Company ("Lilly"); GlaxoSmithKline, LLC; GlaxoSmithKline/SmithKline Beecham Corp.; Kremers-Urban Co.; Lannett Co., Inc.; Mallinckrodt Inc.; Merck Sharp & Dohme Corp.; Merrell Dow Pharmaceuticals, Inc.; Ortho-McNeil Pharmaceutical, Inc.; Pfizer; Premo Pharmacuetical Laboratories, Inc.; Rhone-Poulenc Rorer Pharmaceuticals, Inc.; and Solvay Pharmaceuticals, Inc. Compl., No. 10-CV-2233 (E.D.N.Y.), ECF No. 1; Compl., No. 10-CV-1011 (E.D.N.Y.), ECF No. 1. Plaintiffs' products liability actions assert that the defendant drug companies are liable for injuries plaintiffs sustained as the result of *in utero* exposure to the prescription medication diethylstilbestrol ("DES"), which each of the defendants formerly manufactured and marketed. See generally Compl., No. 10-CV-2233; Compl., No. 10-CV-1011.

Discovery in plaintiffs' actions is complete and a trial between plaintiffs and Lilly is scheduled to commence on April 23, 2012, before District Judge Eric N. Vitaliano. See Minute Entry of Feb. 23, 2012, No. 05-CV-3386 (E.D.N.Y.), ECF No. 278.[1] Pending now before the Court is plaintiffs' pretrial motion for partial summary judgment on the grounds of collateral estoppel. See Mem. of Law in Supp. of Pls.' Mot. for Collateral Estoppel ("Pls.' Mem.") at 1, No. 10-CV-2233, ECF No. 46-2.[2] Pursuant to Judge Vitaliano's DES case management plan, plaintiffs' motion has been referred to me for a Report and Recommendation.

For the reasons discussed below, I respectfully recommend that plaintiffs' motion for partial summary judgment on the grounds of collateral estoppel be granted in part and denied in part, with Lilly being estopped from contesting jury findings (1), (3), (4), and (5) from Bichler v. Eli Lilly & Co., 55 N.Y.2d 571 (1982).

---

[1] All DES actions filed in the Eastern District of New York are consolidated before me for purposes of discovery. Accordingly, the Minute Entries for global status and discovery conferences are filed on one central docket, No. 05-CV-3386.

[2] Although the parties' motion papers were concurrently filed on both of the plaintiffs' respective dockets, for simplicity's sake, all further ECF citations refer to the Mazzei docket, No. 10-CV-2233.

## I. FACTUAL BACKGROUND

Plaintiff Stephanie Mazzei was born on July 27, 1971. Compl. ¶ 2, No. 10-CV-2233. Plaintiff Dorothea Woods-Gaston was born on March 31, 1971. Compl. ¶ 2, No. 10-CV-1011. In 2010, plaintiffs filed suit against Lilly and its co-defendants, making claims for strict products liability, negligence, breach of express warranty, breach of implied warranty, and fraudulent misrepresentation, and seeking redress for injuries alleged to have been caused by their *in utero* exposure to DES. See Compls. ¶¶ 24–78. Plaintiffs specifically allege that their injuries were caused by Lilly and its co-defendants' failure to test DES prior to marketing and distributing the drug. Id. In anticipation of trial, plaintiffs now move for partial summary judgment against Lilly on the grounds of collateral estoppel, claiming that Lilly should be estopped from contesting five of seven jury findings upheld in the 1982 New York Court of Appeals case Bichler v. Eli Lilly & Co. Pls.' Mem. at 2.

## II. DISCUSSION

### A. Collateral Estoppel

New York law defines collateral estoppel as "a narrower species of res judicata, [which] precludes a party from relitigating in a subsequent action or proceeding an issue clearly raised in a prior action or proceeding and decided against that party or those in privity, whether or not the tribunals or causes of action are the same."[3] Ryan v. New York Tel. Co., 62 N.Y.2d 494, 500 (1984); see also ABN AMRO Bank, N.V. v MBIA Inc., 17 N.Y.3d 208, 226 (2011) ("It is well settled that the doctrine 'may be invoked in a subsequent action or proceeding to prevent a party

---

[3] Collateral estoppel is also known as "issue preclusion" and, in cases such as this where the principle is invoked by the plaintiff, "offensive collateral estoppel." Securities Exch. Comm'n v. Monarch Funding Corp., 192 F.3d 295, 303 (2d Cir. 1999) ("Under the doctrine of offensive collateral estoppel (more recently called offensive issue preclusion), a plaintiff may foreclose a defendant from relitigating an issue the defendant has previously litigated but lost against another plaintiff.").

from relitigating an [identical] issue decided against that party in a prior adjudication.'") (alteration in original) (citation omitted).

Under New York law, two factors must be present in order for the doctrine of collateral estoppel to apply: (1) the issue to be decided in the second action is identical to an issue necessarily decided in the earlier proceeding; and (2) the party against whom collateral estoppel is asserted had a full and fair opportunity to litigate the issue in that earlier proceeding. Hill v. Coca Cola Bottling Co., 786 F.2d 550, 552–53 (2d Cir. 1986). The party seeking the benefit of collateral estoppel has the burden of demonstrating that the issues in the present and prior litigations are identical, whereas the party attempting to defeat its application has the burden of establishing the absence of a full and fair opportunity to litigate the issue in the prior action. Kaufman v. Eli Lilly & Co., 65 N.Y.2d 449, 456 (1985).

Finally, "federal courts must give to a New York court judgment the same preclusive effect that New York courts would give to it." Genova v. Southampton, 776 F.2d 1560, 1561 (2d Cir. 1985); see also Migra v. Warren City Sch. Dist. Bd. of Educ., 465 U.S. 75, 81 (1984). In other words, if New York law would bar Lilly from relitigating a claim in a subsequent state-court suit, it is likewise barred from relitigating the same factual issues in this court. See id.

**B.**     **Bichler v. Eli Lilly & Co.**

In Bichler v. Eli Lilly & Co., the New York Court of Appeals affirmed the jury responses to instructions and interrogatories concerning Lilly's liability for injuries caused by Bichler's *in utero* exposure to DES. 55 N.Y.2d at 576. Bichler's complaint alleged that her 1953 *in utero* exposure to DES was the proximate cause of the cervical and vaginal cancer that she developed seventeen years after her birth, in 1954. Id. at 577–78. At the conclusion of a two-stage trial, the Bichler jury answered each of the following seven interrogatories in plaintiff's favor:

> (1) Was DES reasonably safe in the treatment of accidents of pregnancy when it was ingested by plaintiff's mother in 1953?
>
> (2) Was DES a proximate cause of plaintiff's cancer?
>
> (3) In 1953 when plaintiff's mother ingested DES, should the defendant, as a reasonably prudent drug manufacturer, have foreseen that DES might cause cancer in the offspring of pregnant women who took it?
>
> (4) Foreseeing that DES might cause cancer in the offspring of pregnant women who took it, would a reasonably prudent drug manufacturer test it on pregnant mice before marketing it?
>
> (5) If DES had been tested on pregnant mice, would the tests have shown that DES causes cancer in their offspring?
>
> (6) Would a reasonably prudent drug manufacturer have marketed DES for use in treating accidents of pregnancy at the time it was ingested by the plaintiff's mother if it had known that DES causes cancer in the offspring of pregnant mice?
>
> (7) Did defendant and the other manufacturers act in concert with each other in the testing and marketing of DES for use in treating accidents of pregnancy?

Id. at 587 n.10. The Court of Appeals upheld the jury's responses, finding that, "we cannot say that the jury's verdict is without a sufficient factual foundation." Id. at 576.

Three years later, the Court of Appeals took up the issue of the collateral estoppel effect of the Bichler jury findings in Kaufman v. Eli Lilly & Co. Kaufman's complaint alleged that her 1954 *in utero* exposure to DES was the proximate cause of her development of cervical cancer at the age of eighteen in 1973. 65 N.Y.2d at 453–54. Kaufman conceded, as do plaintiffs in this case, that the second Bichler finding as to proximate cause cannot be given collateral estoppel effect in subsequent litigations. See id. at 457–58. The trial court in Kaufman gave collateral estoppel effect to the six remaining Bichler jury findings. Id. at 454–55. On appeal, Lilly argued, in part, that Bichler should not be given collateral estoppel effect because the cases did not raise identical issues, and because the Bichler decision was based on an unresolved and novel application of the law of concerted action not expressly adopted in New York. Id. at 455.

5

Applying the two requirements for invocation of the doctrine, the Court of Appeals held that "collateral estoppel effect should be denied for the Bichler jury's finding on concerted action [finding (7)] but that Lilly should be precluded from relitigating the five remaining issues relevant to this action." Id. at 456. The Court found that, "[i]dentity of issues [did] exist . . . because the legal theory in both actions is the same and because there are no significant factual differences between them." Id. The Court denied application of collateral estoppel as to the concerted action finding (7) because its application had not actually been litigated in Bichler. Id. at 457. However, the Court found that this had "no bearing on the factual issues resolved by the jury when it answered the remaining interrogatories . . . ." Id. It also went on to note that, "[t]he issues Lilly will be precluded from relitigating in this case relate solely to the facts underlying its negligence in testing, questions found against it by the Bichler jury and questions which are also involved in this case." Id. That is to say, in Kaufman, the Court of Appeals affirmed the collateral estoppel effect of the Bichler jury's findings as to the factual questions of Lilly's negligence in testing and marketing DES.

Plaintiffs here argue that, pursuant to Kaufman, Lilly should again be precluded from relitigating certain of the issues resolved by the Bichler jury. Pls.' Mem. at 3. Specifically, plaintiffs posit that Lilly should be estopped from contesting Bichler findings (1), (3), (4), (5), and (6). Id. at 2. Plaintiffs concede that finding (2) as to proximate cause should be contested anew at trial, and that finding (7) does not apply due to plaintiffs' theory of market share, rather than concerted action, liability.[4] Id. Plaintiffs argue that, except for the difference in year of

---

[4] The Court of Appeals permanently abandoned concerted action and alternative liability in favor of market share liability in Hymowitz v. Eli Lilly & Co., 73 N.Y.2d 487 (1989). Hymowitz, further discussed infra, established that a DES drug manufacturer's liability shall be predicated upon that company's DES market share for the year in which a particular plaintiff was born. Id. at 507.

ingestion, the factual issues in their action are identical to those resolved in Bichler in that they also allege prenatal injuries resulting from Lilly's failure to test DES. See id. at 3–4.

Lilly counters that it should not be collaterally estopped from relitigating any of the issues decided by the Bichler jury for three reasons: (i) plaintiffs' cases and Bichler present vastly different regulatory and warnings issues; (ii) Bichler no longer has any precedential value; and (iii) applying collateral estoppel will not make the trial of plaintiffs' cases more efficient. Def. Eli Lilly & Co.'s Mem. of Law in Opp. to Pls.' Mot. for Partial Summ. J. ("Lilly Mem.") at 1–4, ECF No. 46-3. However, as explained below, I find these arguments largely unavailing, and therefore recommend that Lilly be collaterally estopped from relitigating findings (1), (3), (4), and (5) from Bichler during plaintiffs' trial.

*i. Plaintiffs' cases and Bichler do not present vastly different issues*

Lilly argues that the factual issues decided in Bichler differ from those in plaintiffs' cases such that the identity of issues required for application of collateral estoppel is lacking. Id. at 1–3. Lilly specifically points to the fact that Bichler was born in 1953, whereas Mazzei and Woods-Gaston were born in July 1971 and March 1971, respectively. Id. at 2. This difference in years is meaningful, Lilly argues, because in 1967, the Food and Drug Administration ("FDA") notified Lilly that warnings about possible adverse fetal reactions should be added to the future product literature of a broad spectrum of drugs which might be prescribed to pregnant women, including DES. Id. As a result of the drug's safety having been questioned, Lilly decided to delete the indication of DES for use in pregnancy. Id. Accordingly, by 1969, before plaintiffs' mothers ingested DES, the FDA had approved the following warning contained in Lilly's revised DES product literature: "Warning: Because of possible adverse reaction to the fetus, the risk of estrogen therapy should be weighed against the possible benefits when [DES] is

7

considered for use in a known pregnancy." Physician Desk Reference 819–20 (1969), Aff. of Adam B. Michaels in Opp. to Pls.' Mot. for Partial Summ. J. ("Michaels Aff."), Ex. B, ECF No. 46-4. Accordingly, Lilly argues that in determining whether it was not reasonably prudent in marketing DES for accidents of pregnancy, the jury must take into account that by the time plaintiffs' mothers ingested DES, Lilly's package insert did not indicate the drug for use in pregnancy and warned doctors of the drug's potential adverse effects on the fetus. Lilly Mem. at 3. These changes, Lilly maintains, destroy the identity of issues necessary for application of collateral estoppel. See id.

I disagree that these differences render all of the Bichler findings inapplicable to plaintiffs' cases. First, it bears noting that a variation in years does not, in and of itself, destroy the identity of issues.[5] See Kaufman, 65 N.Y.2d at 455 n.2. Second, and more importantly, that Lilly may have ceased marketing DES for use in pregnancy by the time plaintiffs' mothers ingested the drug is irrelevant to the majority of the Bichler findings at issue here. Of the five findings that plaintiffs argue should apply to their cases, only finding (6) pertains to Lilly's unreasonable marketing of DES specifically for use in treating accidents of pregnancy. See supra at 5; Pls.' Mem. at 2. None of the other four findings make any mention of the exact use for which Lilly marketed DES.[6] See Bichler, 55 N.Y.2d at 587 n.10.

Lilly has raised a question as to whether DES was in fact still marketed for use in accidents of pregnancy at the time plaintiffs' mothers ingested the drug. Therefore, I find that

---

[5] Nor do subsequent cases have to be the exact medical parallel of Bichler. Schaeffer v. Eli Lilly & Co., 113 A.D.2d 827, 830 (N.Y. App. Div. 2d Dep't 1985) ("[W]hatever medical differences may exist between the two cases are simply not relevant to the issues relating to defendant's inadequate testing and the negative effects of DES and do not justify relitigation of those issues.").

[6] Although finding (4) also mentions marketing, it does not pertain to a specific use for which DES was marketed. Supra at 5. Furthermore, the subject of finding (4) is the issue of Lilly's failure to test DES on pregnant mice prior to marketing the drug, not the marketing, per se. See id.

Lilly has established a non-identical issue in plaintiffs' suits that it did not have a full and fair opportunity to litigate in Bichler. This issue pertains solely to finding (6). Accordingly, I recommend that plaintiffs' motion be denied insofar as it concerns the preclusive effect of Bichler finding (6).

   *ii. Bichler is still of precedential value*

Lilly also argues that the preclusive effect of the Bichler verdict was destroyed by the 1989 case Hymowitz v. Eli Lilly & Co., in which the Court of Appeals adopted the market share liability theory and expressly rejected the concert of action theory upon which Lilly was found liable in Bichler. Lilly Mem. at 3–4. In support of this argument, Lilly cites the unreported case Soares v. Abbott Labs., No. H-86714 (N.Y. Sup. Ct. Erie Cnty. Apr. 29, 1994). In Soares, Justice James B. Kane found that Bichler "is no longer of any precedential value" on account of Hymowitz, and refused to apply collateral estoppel on any issues to a DES products liability case involving the same cancer injury at issue in Bichler. Id. at 3–4. Lilly goes on to note that, since Soares was decided, no court has given preclusive effect to the Bichler verdict.[7] Lilly Mem. at 4.

I decline to follow Justice Kane's decision that Bichler is no longer of any precedential value for several reasons. First, and most importantly, Justice Kane's conclusion is contradicted by the plain language of the Hymowitz decision. Plaintiffs concede that Hymowitz's adoption of market share liability eliminated the concerted action liability theory in New York, thereby forever rendering Bichler finding (7) irrelevant for purposes of collateral estoppel. See Pls.' Mem. at 2. However, by its own terms, Hymowitz does nothing more with regard to Bichler; the Court merely holds that, "given the opportunity to assess the merits of this [concerted action]

---

[7] Lilly also notes that, "Judge Jack Weinstein too, when he presided over the federal DES litigation in New York, advised that he would not grant collateral estoppel motions." Tr. of Status Conf. at 8:15–21, Nov. 21, 2002, In re: DES Litigation, No. 00-CV-4319 (E.D.N.Y.), Michaels Aff. Ex. D. I find, however, that Judge Weinstein's one-sentence response to plaintiff's counsel's request for permission to file a motion for collateral estoppel, devoid of any legal analysis or justification, is indicative of nothing vis-à-vis the present suits.

9

theory, we decline to adopt it as the law of this State." 73 N.Y.2d at 508. Indeed, the Court of Appeals has itself gone on to concurrently cite both Bichler and Hymowitz, evincing an understanding that Hymowitz refined, but did not, as Lilly maintains, "destroy," Bichler. In re: DES Market Share Litigation, 79 N.Y.2d 299, 301–02 (1992).

Second, as noted by plaintiffs, New York courts generally accord little or no precedential value to unreported cases. See Bd. of Managers of Soho Int'l Arts Condo. v. City of New York, 2003 U.S. Dist. LEXIS 10221, at 51 n.20 (S.D.N.Y. June 17, 2003) (applying New York law); Dubai Islamic Bank v. Citibank, N.A., 126 F. Supp. 2d 659, 669 n.14 (S.D.N.Y. 2000) (citing Eaton v. Chahal, 146 Misc. 2d 977 (N.Y. Sup. Ct. 1990)). Third and finally, as a trial court decision, the Soares opinion lacks the binding authority of a higher appellate court decision. See People v. Pestana, 195 Misc. 2d 833, 836 (N.Y. City Crim. Ct. 2003) (citing McKinney's Cons Laws of NY, Book 1, Statutes § 72 [b], Comment.).

In short, Bichler, rendered capable of collateral estoppel effect by Kaufman, remains good law notwithstanding the adoption of market share liability by Hymowitz and the dearth of recent cases applying its jury's findings. That the Bichler negligence action was premised upon concerted action liability theory and plaintiffs' present actions are premised upon market share liability is of no moment. Ryan, 62 N.Y.2d at 500 (The doctrine of collateral estoppel can be applied "whether or not the tribunals or causes of action are the same.") (emphasis added). Therefore, I find that Bichler remains good law, that the majority of the issues addressed by its jury findings are identical to those involved in plaintiffs' suits, and accordingly recommend that jury findings (1), (3), (4), and (5) be given preclusive effect in plaintiffs' cases by virtue of collateral estoppel.[8]

---

[8] Naturally, the references in these findings to the year 1953 should be replaced with the year 1971, the year in which plaintiffs' mothers ingested DES.

*iii. Trial efficiency*

Finally, Lilly argues that granting preclusive effect to parts of the Bichler verdict against it would not serve collateral estoppel's purpose of reducing litigation or conserving judicial and litigant resources. Lilly Mem. at 4. Lilly notes that not all of the defendants in plaintiffs' cases were parties to the Bichler case and that, "to the extent that [p]laintiffs mount a negligent testing case at trial, they still will need to present evidence to the jury that would allow the jury to make the same findings as the Bichler jury." Id. However, I reject this argument in light of the fact that Lilly is the only defendant currently slated for trial against plaintiffs.

## III. CONCLUSION

For the foregoing reasons, I respectfully recommend that plaintiffs' motion for partial summary judgment on the grounds of collateral estoppel be granted in part and denied in part, with Lilly being estopped from contesting jury findings (1), (3), (4), and (5) from Bichler v. Eli Lilly & Co., 55 N.Y.2d 571 (1982). Any objections to this Report and Recommendation must be filed with the Clerk of the Court, with a copy to the undersigned, within fourteen (14) days of the date of issuance of this Report and Recommendation. Failure to file objections within the specified time waives the right to appeal the District Court's order. See 28 U.S.C. § 636(b)(1); F.R.C.P. 6(a), 72.

SO ORDERED.

Dated: March 13, 2012
Brooklyn, New York

/s/
JOAN M. AZRACK
UNITED STATES MAGISTRATE JUDGE