UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------x
LAURA ANNE BEZUIDENHOUT,

                          Plaintiff,

              -against-

THE ABBOTT LABORATORIES & CO., et al.,

                        Defendants.
---------------------------------------------------------------x

MEMORANDUM AND ORDER

10-CV-1011 (ENV) (JMA)

VITALIANO, D.J.

On September 10, 2012, Magistrate Judge Joan M. Azrack issued a Report and Recommendation ("R&R") in which she recommended that defendants' motion for summary judgment be granted, dismissing all claims brought in this action by plaintiff Laura Anne Bezuidenhout. On October 4, 2012, plaintiff made timely objections to the R&R. After careful and *de novo* review of the record, this Court adopts Judge Azrack's R&R in its entirety, as supplemented by this Memorandum and Order, as the opinion of the Court. The reasons are detailed below.

## BACKGROUND

On March 5, 2010, plaintiff filed suit against drug companies Abbott Laboratories; Carnrick Laboratories, Inc.; Dart Industries, Inc.; E.R. Squibb & Sons, L.L.C ("Squibb"); Eli Lilly and Company ("Lilly"); GlaxoSmithKline, LLC; GlaxoSmithKline/SmithKline Beecham Corp.; Kremers-Urban Co.; Lannett Co., Inc.; Mallinckrodt Inc. ("Mallinckrodt"); Merck Sharp & Dohme Corp.; Merrell Dow Pharmaceuticals, Inc.; Ortho-McNeil Pharmaceutical, Inc.; Pfizer; Premo Pharmacuetical Laboratories, Inc. ("Premo"); Rhone-Poulenc Rorer Pharmaceuticals, Inc.; and Solvay

1

Pharmaceuticals, Inc.,[1] asserting that defendants are liable for injuries Bezuidenhout sustained from her *in utero* exposure to the prescription medication diethylstilbestrol ("DES"), (Compl. ¶¶ 7-23, 34), which was formerly manufactured and marketed by each of the defendants. (Compl. at ¶ 24.) On February 10, 2012, Lilly filed a motion for summary judgment, (Docket No. 77), which was joined by all other remaining defendants—Mallinckrodt, Premo, Squibb, and Upjohn—claiming that plaintiff could not identify the manufacturer of the DES taken by her mother, as required under the law of Texas, which governs the case.[2]

Upon reference pursuant to Rule 72(b), Judge Azrack determined that defendants' motion for summary judgment dismissing all claims should be granted in its entirety. (Docket No. 114.) To plaintiff's timely objections ("Objections"), (Docket Nos. 115, 117), Lilly filed a timely response on October 9, 2012, (Docket No. 118).

## STANDARD OF REVIEW

In reviewing a Report and Recommendation of a magistrate judge, a district judge "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). Moreover, in conducting its review, the district "court need only satisfy itself that there is no clear error on the face of the record" to accept a magistrate judge's Report and Recommendation, that is, where no timely objection has been made. *Urena v. New York*, 160 F. Supp. 2d 606, 609-10 (S.D.N.Y. 2001) (quoting *Nelson v. Smith*, 618 F. Supp. 1186, 1189 (S.D.N.Y. 1985)). But, as is the case here, a district judge is required to "determine *de novo* any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3); *see also Arista Records, LLC v. Doe 3*, 604 F.3d 110, 116 (2d Cir.

---

[1] Pharmacia & Upjohn Co. ("Upjohn") was named as a defendant in the Amended Complaint filed on April 27, 2010.
[2] The parties agree that Texas law is controlling here. (R&R at 4.)

2010).

## DISCUSSION

Plaintiff objects to the R&R, contending that the action should be permitted to proceed to trial irrespective of plaintiff's ability to identify the drug company that manufactured her mother's DES, because Texas law remains unsettled as to the applicability of the market share theory of liability in the products liability field. (Objections at 1-7.) Relatedly, plaintiff claims that she raises a genuine issue of fact as to the identity of the relevant drug manufacturer. (Objections at 7-9; Ltr. (Oct. 4, 2012).)

### 1. Texas Courts Have Not Adopted Market Share Liability

Plaintiff argues that, founded on the premise that Texas courts have not determined whether a plaintiff can use market share theory to prove causation in a products liability action, a federal court applying Texas law should allow a case like the one at bar to proceed to trial. Plaintiff postulates further that the New York Court of Appeals would do so, in light of Texas's certification statute. (Objections at 1.) The Court need not wade too deeply into Bezuidenhout's pool of hypotheticals, since it rests upon a false premise—Texas law, as to proof of causation, is unsettled. It is not. "Texas law," as Judge Azrack stated succinctly, "has declined to adopt market share or other alternative liability theories for product liability suits." (R&R at 8.) Thus as a foundational step, Texas law requires plaintiff to identify the specific manufacturer of the DES ingested by her mother to warrant trial of liability issues.

Plaintiff tries to bootstrap to an alternate reality. She builds her argument around *Gaulding v. Celotex Corp.*, 772 S.W.2d 66, 71 (Tex. 1989), a 13-year-old decision in which the Supreme Court of Texas cabined its refusal to apply market share liability by stating that "[w]e are not to be construed as approving or disapproving alternative liability, concert of action,

3

enterprise liability, or market share liability in an appropriate case." (Objections at 5.) As built, the argument is a phantom, focusing only on what the Texas high court did not do. Although faced with the opportunity to add new lanes on the causality highway to encompass such theories of liability, neither then nor in the intervening years, has the Supreme Court of Texas once chosen to do so. (*See* R&R at 6 (citing *Sysco Food Servs. v. Trapnell*, 890 S.W.2d 796 (Tex. 1994); Objections at 5.)

Significantly, presented with the question of whether Texas law now recognizes alternative theories of liability, the Fifth Circuit has held on two occasions, post-*Gaulding*, that Texas law requires "that the plaintiffs must prove that the defendant supplied the products which caused the injury" in products liability actions. *Fibreboard Corp. v. Pittsburgh Corning Co.*, 893 F.2d 706, 711 (5th Cir. 1990); *see also Cimino v. Raymark Industs., Inc.*, 151 F.3d 297, 312 (5th Cir. 1998)(rejecting district court's finding, on the basis of *Gaulding*, that the Texas Supreme Court would apply collective liability, and determining that "under Texas personal injury products liability law causation and damages are determined respecting plaintiffs as individuals, not groups.")(citation omitted)). The Eastern District of Texas echoed this principle in a recent pharmaceutical products liability action, reiterating that the plaintiff was required to "adduce evidence that [the defendant] supplied the specific doses that allegedly caused [plaintiff's] injury." *Hicks v. Pfizer*, 466 F. Supp. 2d 799, 804 (E.D. Tex. 2005).

Bezuidenhout is undeterred by this line of Fifth Circuit authority. She urges a finding of ambiguity in Texas law nonetheless. Plaintiff begins with the premise that other state high courts, having recognized the unique challenges presented by DES cases, have fashioned a unique response, which they have demonstrated by "consistently declin[ing] to extend market share theory beyond DES." (Objections at 5.) Since the Texas courts have never opined on such

a case, the DES exception to products liability law is unsettled. By this logic, the law of any state that has not decided a DES case would be deemed unsettled, levering New York courts, and the courts of other states with similar conflicts laws, into the suboptimal position of deciding novel questions of law on behalf of their sister states. Of course, such meddlesomeness should be completely avoided in cases like this where the premise that the law is ambiguous is false. Texas law is not unsettled; one of the objects of this lawsuit if to unsettle it. To the contrary, like the *Hicks* court, this Court "is bound to apply the law of Texas as it currently exists and will not create innovative theories of recovery or defense under local law." *Hicks v. Pfizer*, 466 F. Supp. 2d. at 803 (citation omitted). As Judge Azrack rightly concluded, "the general identification rule under Texas law applies here and, in order to sustain her action, plaintiff must identify the specific manufacturer [or manufacturers] of the DES to which she was exposed." (R&R at 8.)

2. Evidence of Manufacturer Identity

Plaintiff argues in her Opposition to defendants' summary judgment motion (Docket no. 77-10), in her Objections to the R&R (Docket no. 117), and in a Supplemental Affirmation (Docket no. 117) that defendants' are not entitled to summary judgment because she has adduced evidence sufficient to identify Lilly as the manufacturer of the DES consumed by her mother.[3] Bezuidenhout constructs her argument around three highly flawed proffers of evidence: (1) an affirmation by her mother, Annie Mary Wiseman ("Wiseman affirmation"); (2) a telephone log ("Turner log") documenting a conversation between plaintiff's counsel and the current owner of the pharmacy where Wiseman, as she testified, purchased DES; and (3) an affirmation by a pharmaceutical consultant, Phillip P. Harnish ("Harnish affirmation"). As

---

[3] Presumably, if the Court were to credit Bezuidenhout's contention, the evidence aimed solely at Lilly would exculpate all other defendants under the substantive law of Texas as it has been determined by the Court.

5

explained below, none (alone or in combination) raises a genuine issue of material fact.

   A. Wiseman Affirmation

As Judge Azrack expounded in the R&R, numerous flaws undermine the probative value of the Wiseman Affirmation. Most significantly, the affirmation, in which Wiseman identifies Lilly as the manufacturer of the DES she ingested while pregnant with plaintiff, directly contradicts deposition testimony she gave two years earlier. (Defs. Mem. in Support, Ex. B at 44.) "[A] party may not create an issue of fact by submitting an affidavit in opposition to a summary judgment motion that, by omission or addition, contradicts the affiant's previous deposition testimony." *Hayes v. N.Y. City Dep't of Corrections*, 84 F.3d 614, 619 (2d Cir. 1996). Without even attempting to explain the reason for Wiseman's about-face, the affirmation, submitted with plaintiff's Opposition to defendants' summary judgment motion, is not properly before the Court. *See Reynolds v. Sealift, Inc.*, 311 Fed. Appx. 422, 425 (2d Cir. 2009). The affirmation's reference to the "Dear Doctor" letter from Lilly forwarded by Wiseman's prescribing doctor does not rehabilitate the averment in contradiction of her deposition testimony. Neither in the affirmation, nor during her deposition, when Wiseman discussed the very same letter at length, (Defs. Mem. in Support, Ex. B at 45-48), did she claim that the letter, which she no longer has and a copy of which she does not claim to have seen since the initiation of this suit, refreshed her memory or otherwise informed her that Lilly actually manufactured her DES.

Bezuidenhout contends, nonetheless, that, pursuant to the reasoning of *Hicks v. Charles Pfizer & Co.*, 466 F. Supp.2d 799 (E.D. Tex. 2005), the Court should consider the "Dear Doctor letter" as "adequate circumstantial evidence to defeat summary judgment." (Objections at 8.) The *Hicks* court, as Judge Azrack observed, allowed plaintiff's action to survive summary

6

judgment on the basis of four newspaper articles, which it found admissible pursuant to Federal Rule of Evidence 807. In so doing, the court ruled that the articles "evince particularized guarantees of trustworthiness."[4] None of those particularized guarantees are present in this instance, nor are any others offered by plaintiff. (R&R at 11.) Indeed, Judge Azrack correctly found *Hicks* inapposite for that reason. *Id.* The Wiseman affirmation, including its reference to the "Dear Doctor letter" remains inadmissible and, therefore, cannot raise a genuine issue of material fact.

### B. Turner Log

The Turner log is similarly unhelpful in establishing the existence of a disputed material fact. Presented as plaintiff's counsel's notes from a conversation with the owner of the pharmacy where Wiseman purchased DES regarding past practices at the pharmacy, (Shainwald Aff. Ex. C.), the Turner log constitutes hearsay.[5] Furthermore, it does not memorialize that the pharmacist had knowledge (personal or recorded) that plaintiff's mother was dispensed Lilly's product, *i.e.*, that he is competent to testify about anything regarding whether DES was actually dispensed there to fill Wiseman's prescription, much less its origin. *Id.* At best, the Turner log informs that, at some point, Lilly's DES was among the medications available at the pharmacy. It would be speculative, and impermissible, to infer solely on that basis that Lilly's DES was the

---

[4] The *Hicks* court delineated five such guarantees: (1) "the statements in question were made long before any motive to fabricate arose," (2) "[h]ad Pfizer not manufactured the vaccine, it is likely that the true manufacturer . . . would have stepped forward to correct the misinformation contained in the newspaper articles," (3) "[t]he risk of mistake or dishonesty is reduced given the multiple publications by different sources," (4) "the newspaper articles were written and published nearly contemporaneously with the events in question," and (5) "the issue of product identification presented in this case is a 'binary event': either Pfizer supplied the doses, or it did not." 466 F. Supp. 2d at 808-09.

[5] On its face, it is not clear whether the log constitutes ordinary or double hearsay, as the two sentence summary does not specify whether Turner was describing the practice of the pharmacy while it was under his ownership or while it was under the ownership of his predecessor, about which he would have learned only second hand.

7

only one dispensed to Wiseman. As Judge Azrack discussed in detail, the Turner log contains nothing more than "a conclusory statement," on the basis of which "no reasonable jury could find for plaintiff." (R&R at 13.) Nothing in the proffer justifies an exception to the hearsay rule; nor can it support a factual conclusion as to the pharmacy's practice at the relevant time. "As a result, the Turner telephone log is also insufficient to create a genuine issue of material fact in this case." *Id.*

### C. Harnish Affirmation

After objecting to the R&R, plaintiff attempted to repair her evidentiary shortcomings by filing the Harnish affirmation in a supplemental submission. (*See* Ltr. (Oct. 4, 2012).) In fact, if anything, the Harnish affirmation has had the reverse effect, serving only to undermine any shred of probative value the Court might have found in the Turner log. In his affirmation, Harnish, a pharmaceutical consultant, affirms that the current owner of the pharmacy where Wiseman says she purchased DES told him by telephone that the pharmacy stocked DES manufactured by Lilly when he purchased the business in 1962. (Harnish affirmation at ¶ 6.) As plaintiff was born in 1957, (Objections at 2), the Harnish codicil to the Turner log about the stocking of Lilly's DES is entirely immaterial, other than to diminish the probative worth of the Turner log. As a consequence, the log and the codicil, whether each is read separately or in combination, do not create a material issue as to the identity of the manufacturer (or manufacturers) of the DES consumed by Wiseman (even discounting the hearsay bar).

Thus having reviewed *de novo* the evidence, the Court concludes that plaintiff fails to raise a genuine issue of material fact regarding the identity of the manufacturers of the DES that her mother ingested. In any event, assuming, as plaintiff claims, that these proffers did

only one dispensed to Wiseman. As Judge Azrack discussed in detail, the Turner log contains nothing more than "a conclusory statement," on the basis of which "no reasonable jury could find for plaintiff." (R&R at 13.) Nothing in the proffer justifies an exception to the hearsay rule; nor can it support a factual conclusion as to the pharmacy's practice at the relevant time. "As a result, the Turner telephone log is also insufficient to create a genuine issue of material fact in this case." *Id.*

### C. Harnish Affirmation

After objecting to the R&R, plaintiff attempted to repair her evidentiary shortcomings by filing the Harnish affirmation in a supplemental submission. (*See* Ltr. (Oct. 4, 2012).) In fact, if anything, the Harnish affirmation has had the reverse effect, serving only to undermine any shred of probative value the Court might have found in the Turner log. In his affirmation, Harnish, a pharmaceutical consultant, affirms that the current owner of the pharmacy where Wiseman says she purchased DES told him by telephone that the pharmacy stocked DES manufactured by Lilly when he purchased the business in 1962. (Harnish affirmation at ¶ 6.) As plaintiff was born in 1957, (Objections at 2), the Harnish codicil to the Turner log about the stocking of Lilly's DES is entirely immaterial, other than to diminish the probative worth of the Turner log. As a consequence, the log and the codicil, whether each is read separately or in combination, do not create a material issue as to the identity of the manufacturer (or manufacturers) of the DES consumed by Wiseman (even discounting the hearsay bar).

Thus having reviewed *de novo* the evidence, the Court concludes that plaintiff fails to raise a genuine issue of material fact regarding the identity of the manufacturers of the DES that her mother ingested. In any event, assuming, as plaintiff claims, that these proffers did

create a genuine issue of material fact about whether Lilly manufactured the DES plaintiff's mother ingested, summary judgment would still be properly granted as to all active defendants other than Lilly, about whom no such evidence was proffered.

## Conclusion

For the foregoing reasons, upon *de novo* review, the Court finds Magistrate Judge Azrack's R&R to be correct, well-reasoned, and free of reversible error. The Court, therefore, adopts the R&R in its entirety, supplemented by this Memorandum and Order, as the opinion of the Court. Defendants' motion for summary judgment is granted, and plaintiff Bezuidenhout's claims in this action are dismissed.

SO ORDERED.

Dated: Brooklyn, New York
January 6, 2012

s/ ENV

_____
ERIC N. VITALIANO
United States District Judge